IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KENDRICK STORY                                                                                    PLAINTIFF

V.                                    CASE NO. 1:16-CV-01004

JANET DELANEY, Jail Administrator,
Columbia County, Arkansas                                                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is the Report and Recommendation filed on June 13, 2017, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 42. Plaintiff has filed timely objections. ECF No. 43. The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiff filed the present 42 U.S.C. § 1983 action on January 21, 2016. ECF No. 1. Plaintiff sues Defendant in her official and individual capacities for deliberate indifference to his serious medical needs. ECF No. 1, p. 8. Plaintiff alleges that on November 29, 2015, he slipped when exiting a shower at the Columbia County Detention Center ("CCDC") due to standing water and injured his hand and back. ECF No. 1, p. 5. Plaintiff filed a grievance[1] on November 30, 2015, and met with Defendant that same day. ECF No. 1, p. 5; ECF No. 41-1, p. 2. Plaintiff states that

---

[1] Plaintiff stated the following on his grievance form:

> On 11/29/15 I fell while getting out of the shower and hurt my right thumb and my back. I told the officer that was on duty he saw my hand as well as the standing water that was on the floor in front of the shower. That officer tried to have me looked at but to no avail I'am [sic] in alot [sic] of pain and I really need to get some help, I was told that a report was made on the incident and that it would be passed on to the next shift.

ECF No. 41-1, p. 2.

Defendant looked at his thumb and admitted that it was swollen, but "didn't address the issue with [his] back at all." ECF No. 1, p. 5. Plaintiff states that he told Defendant he was in pain and needed medical attention. ECF No. 1, p. 5. Plaintiff alleges that he was not given any medication for his pain and that he should have been taken to the hospital. ECF No. 1, pp. 5-6. Plaintiff does not allege that he requested Defendant provide him with pain medication and, regardless, it is undisputed that Defendant is not a medical professional. Defendant directed another officer to provide Plaintiff with a medical request form so that he could be seen by a medical professional later that afternoon. ECF No. 1, pp. 5, 9. Plaintiff states that he filled out the medical request form on November 30, 2015, "but didn't see the doctor until December 1, 2015." ECF No. 1, p. 5.

Plaintiff states that the doctor who examined him, Doctor Antoon, ordered that x-rays be taken of Plaintiff's hand and back. ECF No. 1, p. 5. Defendant admits that on December 1, 2015, Doctor Antoon ordered that x-rays be taken of Plaintiff's right hand and lower back. ECF No. 41-1, p. 5. The record does not reflect any other course of treatment or prescriptions ordered by Doctor Antoon. Plaintiff states that x-rays were not performed until sometime after he was transferred to the Arkansas Department of Correction ("ADC") on December 10, 2015. ECF No. 1, p. 6. Two x-rays were taken of Plaintiff's hand shortly after he was transferred to the ADC. Both indicated that his hand had not been fractured. ECF No. 31, p. 13; ECF No. 38-3, p. 2. Likewise, an x-ray of Plaintiff's back taken less than three months after he was transferred to the ADC yielded normal results. ECF No. 31, p. 12.

On April 28, 2017, Defendant filed a Motion for Summary Judgment. ECF No. 36. Defendant argues that she is entitled to summary judgment because: (1) "Plaintiff has not presented any verifying medical evidence showing that the Defendant was deliberately indifferent to his

medical needs[;]" (2) she is protected by qualified immunity; and (3) there is no basis for official capacity liability.

On May 5, 2017, Plaintiff filed a response to Defendant's Motion for Summary Judgment, a brief in support of his response, and a statement of facts and argued that summary judgment was inappropriate. ECF Nos. 39, 40, 41. Among other things, Plaintiff states that he was taken to the University of Arkansas for Medical Sciences ("UAMS") on April 28, 2017, in regard to his alleged hand injury. ECF No. 39, p. 2. He states that he was seen by a "bone specialist" who agreed "that the Plaintiff['s] right hand was in fact injured because he placed a (cast) on it for (6) six weeks and said if it did not heal" Plaintiff would need surgery. ECF No. 39, p. 2. Plaintiff did not provide the Court with any medical record evidence detailing this alleged examination.

On June 13, 2017, Judge Bryant entered a Report and Recommendation and recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's claims be dismissed with prejudice. ECF No. 42. In regard to Plaintiff's official capacity claim, Judge Bryant found that Plaintiff failed to identify an allegedly unconstitutional policy that was the moving force behind his injury and, therefore, summary judgment is appropriate on that claim. ECF No. 42, pp. 5-6. Judge Bryant further found that Defendant was entitled to summary judgment on Plaintiff's individual capacity claim, concluding that "there are no facts to support [a finding that] Defendant Delaney was deliberately indifferent to Plaintiff's medical needs." ECF No. 42, p. 8. Accordingly, Judge Bryant found it unnecessary to reach the issue of whether Defendant is entitled to qualified immunity.

On June 22, 2017, Plaintiff filed objections to Judge Bryant's Report and Recommendation. ECF No. 43. In his objections, Plaintiff re-asserts many of his previous arguments as well as arguing that Judge Bryant only addressed his alleged hand injury, but failed

3

to address his claimed back injury. ECF No. 43, ¶ 2. Plaintiff also states that Judge Bryant erroneously found that Plaintiff was given pain medication. ECF No. 43, ¶ 5. Further, Plaintiff states that he "has produced everything to the court that came out of the Plaintiff['s] medical jacket, the Plaintiff was sent to (UAMS) on April 28, 2017 where [he] was treated for the injury to [his] right hand the Bone specialist put a (cast) on it for six weeks because [his] right thumb was injured [sic]." ECF No. 43, ¶ 10.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The

nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999). The non-moving party "must come forward with sufficient evidence to support their claims and cannot stand on their complaint and unfounded speculation." *Id.* (internal citations omitted).

## DISCUSSION

Plaintiff has sued Defendant in both her individual and official capacities. The Court will address each of these claims in turn.

### I. Official Capacity Claims

As noted above, Judge Bryant recommends that Plaintiff's official capacity claims be dismissed with prejudice because Plaintiff has failed to identify a policy, practice, or custom that would subject Columbia County, Arkansas, to liability for the alleged violations of Plaintiff's constitutional rights. Although Plaintiff does not specifically object to this conclusion, the Court will address the issue.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim against Defendant Delaney is

treated as a claim against Columbia County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). "[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Columbia County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Upon review of the record, the Court finds that Judge Bryant's conclusion was correct and that Plaintiff does not claim that Defendant acted with deliberate indifference pursuant to a county policy, custom, or practice.[2] Accordingly, the Court finds that Defendant is entitled to summary judgment in regard to Plaintiff's official capacity claims.

## II. Individual Capacity Claims

As noted above, Judge Bryant recommends that Plaintiff's individual capacity claims be dismissed with prejudice because Plaintiff has failed to assert facts to support a finding that Defendant was deliberately indifferent to his medical needs. For the sake of clarity, the Court will address Plaintiff's claims in two parts. First, the Court will address Plaintiff's contention that Defendant acted with deliberate indifference to his serious medical needs in regard to the fact that Plaintiff was allegedly injured on November 29, 2015, and was not seen by Doctor Antoon until

---

[2] The only policy Plaintiff discusses concerns the CCDC's policy that inmates will be charged $25.00 after they have been seen by a doctor. Plaintiff has produced a memo dated March 15, 2015, which states: "EFFECTIVE IMMEDIATELY..[sic] IF YOU FILL OUT A MEDICAL REQUEST TO SEE THE DOCTOR YOU WILL BE CHARGED $25.00 FROM YOUR COMMISSARY ACCOUNT AFTER YOU HAVE SEEN THE DOCTOR." ECF No. 41-1, p. 23 (underlined portion in original). However, Plaintiff does not allege that he was kept from seeing a doctor because he could not pay the $25.00 or that the alleged constitutional violation—deliberate indifference to his serious medical needs—was committed pursuant to the policy. Although it is unclear whether Plaintiff actually paid the $25.00, it is undisputed that he was seen by Doctor Antoon on December 1, 2015.

December 1, 2015. Second, the Court will discuss Plaintiff's claims in regard to the length of time between Plaintiff's initial appointment with Doctor Antoon and the date his x-rays were scheduled.

As an initial matter, it is unclear whether Plaintiff had been convicted at the time of his alleged injuries. Regardless, the Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). "[T]he Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (quoting *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006)). "A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008).

The deliberate indifference standard has two elements—one objective and the other subjective. *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014) ("Whether an official was deliberately indifferent entails both an objective and a subjective analysis.") (citing *Coleman v. Rahija*, 114 F.3d 778, 784-86 (8th Cir. 1997)). Under the objective prong of the analysis, Plaintiff must show that he had an objectively serious medical need. *Id*. at 340. "A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Rahija*, 114 F.3d at 784). Under the subjective prong of the analysis, Plaintiff must show that Defendant actually knew of but deliberately disregarded Plaintiff's serious medical need. *Id*.

Furthermore, "[f]or a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Popoalii*, 517 F.3d at 499 (quoting *Estate*

of *Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*. (citing *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003)). "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

### A. Time Between Alleged Injury and Initial Medical Examination

Plaintiff claims that Defendant was deliberately indifferent to his serious medical needs because he was allegedly injured on November 29, 2015, but was not seen by Doctor Antoon until December 1, 2015. Plaintiff states:

> Defendant was Deliberately Indifferent to plaintiff medical needs because; once I made them aware of the injuries that I received I should have seen a doctor or taken to the hospital but to no avail was any of it done instead I was forced to suffer for (3) three days before I was able to see the doctor. She had a sufficiently culpable state of mind she knew of the injuries she saw them but failed to do anything about it[.]

ECF No. 40, p. 1. To be clear, Plaintiff was allegedly injured on November 29, 2015, and was seen by Doctor Antoon on December 1, 2015. Although Plaintiff claims that he went three days without seeing a physician, based on these dates, it is clear that he was seen by Doctor Antoon two days after he fell.

As noted above, Plaintiff must satisfy both the objective and subjective requirements of the deliberate indifference standard. In regard to whether Plaintiff had an objectively serious medical need, at the time Plaintiff met with Defendant on November 30, 2015, he had not been diagnosed by a physician as needing medical treatment. Likewise, it cannot be said that Plaintiff's alleged injuries were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." As Plaintiff's grievance form shows, Defendant admits that she looked at Plaintiff's thumb and noted that there was a "little bit" of swelling. ECF No. 41-1, p. 2. Further, the statement

8

Plaintiff included on the grievance form simply notes that he fell and "hurt [his] right thumb and [his] back" and that he was "in alot [sic] of pain and [he] really need[ed] to get some help." ECF No. 41-1, p. 2. Even accepting these assertions as true, that Defendant had a slightly swollen thumb and was experiencing lower back pain, nothing in Plaintiff's allegations would support a finding that Plaintiff's claimed injuries were "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Accordingly, the Court finds that Plaintiff has failed to satisfy the objective element of the deliberate indifference standard.

However, even if Plaintiff had satisfied the objective element, he has failed to show that the subjective element is satisfied. As previously stated, to meet this burden, Plaintiff must show that Defendant actually knew of but deliberately disregarded Plaintiff's serious medical need. Upon review of the record, it is clear that Defendant knew of Plaintiff's alleged injuries the day he filed his grievance—November 30, 2015—but there is simply nothing in the record to suggest that she deliberately disregarded Plaintiff's alleged medical needs.

Defendant met with Plaintiff the same day he filed his grievance form to discuss his grievance. During the course of that meeting, Defendant examined Plaintiff's thumb and directed that he be given a medical request form. Plaintiff was then seen by Doctor Antoon the next day. It is clear that Defendant was not deliberately indifferent to Plaintiff's medical needs, but instead quickly responded once she was apprised of the situation. Therefore, the Court finds that Plaintiff has failed to satisfy the subjective element of the deliberate indifference standard. Accordingly, Plaintiff has failed to establish that Defendant was deliberately indifferent to his serious medical needs in regard to the fact that he was allegedly injured on November 29, 2015, and was not seen by a medical professional until December 1, 2015.[3]

---

[3] Plaintiff also claims that he was not given any medication for his pain. ECF No. 1, pp. 5-6. Although there is nothing to suggest that Defendant gave Plaintiff any kind of pain medication, Plaintiff does not allege that he asked Defendant

**B. Time Between Initial Medical Examination and Plaintiff's Scheduled X-ray Appointment**

Plaintiff claims that Defendant disregarded Doctor Antoon's order that x-rays be taken of Defendant's hand and back. Plaintiff argues that Doctor Antoon "made the order on 12/1/15 I remained in her custody for (9) nine more days before I was transferred to prison on 12/10/15 that's nine days [Defendant] could have gotton [sic] me to the doctor office or to the hospital but to no avail was either done instead I was transferred to prison." ECF No. 40, p. 2. It is undisputed that Doctor Antoon ordered that x-rays be taken of Plaintiff's hand and back. ECF No. 41, p. 9.

However, Plaintiff has provided the Court with a copy of the Medical Transportation Log from the CCDC that notes that Plaintiff was scheduled to be taken to see Doctor Antoon on December 16, 2015. ECF No. 41-1, p. 11. There is a handwritten note on the Log that states that Plaintiff was transferred "to ADC before he was taken to Dr. Antoon for x-rays." ECF No. 41-1, p. 11. Plaintiff concedes that this scheduled appointment was for the purpose of taking the ordered x-rays, stating: "<u>See Medical Transportation Log</u> from the Columbia County Jail that shows that I was suppose [sic] to have been taken to Dr. Antoon for x-rays which proves that the defendant knew but disregarded." ECF No. 41, ¶ 9. Thus, it seems clear that Doctor Antoon's orders were technically being complied with and that Plaintiff was scheduled to have x-rays taken of his hand and back. However, Plaintiff appears to take issue with the two-week period between the date of his initial examination by Doctor Antoon and the date his x-rays were scheduled to be completed. Accordingly, although Plaintiff does not explicitly state that his claim is that Defendant was deliberately indifferent to his serious medical needs because she delayed in getting him medical

---

for pain medication. Furthermore, Defendant is not a medical professional and Plaintiff does not allege that she was able to prescribe him any kind of pain medication. Likewise, there is no evidence or claim that Doctor Antoon prescribed any pain medication or otherwise directed that Plaintiff be given pain medication.

treatment, the allegations appear to center around the alleged delay in complying with Doctor Antoon's order.

As Judge Bryant rightly noted, a delay in medical treatment may give rise to a claim for deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care."). However, "[w]hen an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)); *see Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) ("To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect."). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment [.]'" *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005)) (citations omitted).

"Applying this standard, [the Eighth Circuit has] previously held that where an inmate 'submitted evidence documenting his diagnosis and treatment, [but] he offered no evidence establishing that any delay in treatment had a detrimental effect,' the inmate 'failed to raise a genuine issue of fact on an essential element of his claim.'" *Jackson*, 815 F.3d at 1120 (citing *Laughlin*, 430 F.3d at 928). In the present case, Plaintiff has provided evidence that he received treatment for his swollen finger and back pain while in the ADC, but has failed to provide any verifying medical evidence that the delay in receiving his initial x-rays had any detrimental effect. The Court will first address Plaintiff's claimed hand injury and then turn to his back injury.

11

i. **Hand Injury**

On July 5 and July 7, 2016, the ADC filed copies of all medical records it held pertaining to Plaintiff pursuant to a subpoena issued by the Court. Included in the records are radiology reports showing that x-rays were taken of Plaintiff's hand and back. Two x-rays were taken of Plaintiff's right hand soon after he was transferred to the ADC. The first radiology report, dated December 17, 2015, states that the physician saw "[n]o mass, fracture or dislocation" and "[n]o appreciable soft tissue swelling." ECF No. 38-3, p. 2. The physician concluded that there was "[no] definite acute fracture." ECF No. 38-3, p. 2. Likewise, a second radiology report[4] dated January 6, 2016, states that "[a]ll the carpal joints, metacarpophalangeal, proximal and distal interphalangeal joints are well aligned. . . . No fracture or dislocation is seen." ECF No. 31, p. 13. However, the physician did note that there was "[s]egmental soft tissue swelling,"[5] but stated his conclusion as "[u]nremarkable osseous appearance of the right hand." ECF No. 31, p. 13.

Plaintiff has also provided a document labeled "Medical Department Notification of Diagnostic Test Results" stating that the results of a diagnostic test that took place on March 15, 2017, had been received and that based on those results Plaintiff would be scheduled for a follow up appointment with medical personnel. ECF No. 41-1, p. 8. However, this document does not state the subject matter or results of the diagnostic test. Nonetheless, Plaintiff has provided the Court with a handwritten document titled as "Radiology Report" and dated March 15, 2017, that purports to show that Doctor Elliot Wagner found that one of Plaintiff's fingers had been fractured. ECF No. 41-1, p. 10. The document does not bear any imprint of a medical services provider and

---

[4] Plaintiff concedes the truth of this report, citing it as evidence that his thumb had "some segmental soft tissue swelling." ECF No. 41-1, p. 7.

[5] Plaintiff has provided the Court with "Condensed Health Services Encounter" forms dated January 3, 2016; January 13, 2016; and February 17, 2016. ECF No. 41-1, pp. 12-14. All of these documents note that Plaintiff had some swelling in his right thumb. Plaintiff has also filed medical restriction forms showing that he was put on "One Arm/Hand Duty" twice in January 2016. ECF No. 41-1, pp. 15-16.

12

is not on letterhead, but is instead written on a blank piece of white paper. ECF No. 41-1, p. 10. The document states that "[t]here is a fracture involing [sic] first distal phalanx with no displacement there is noted soft tissue swelling[.]" ECF No. 41-1, p. 10. The "report" concludes that Plaintiff has an "[a]cute right first finger fracture as described[.]" ECF No. 41-1, p. 10. At the bottom of the document is the following handwritten statement: "Electronically signed by Elliot Wagner, M.D. 3/16/2017 5:31 AM[.]" ECF No. 41-1, p. 10. It is noteworthy that the other, clearly legitimate, radiology reports state that they are "electronically signed" but also bear the actual signature of the reviewing physician. In contrast, this "radiology report" does not bear any physician's actual signature—even though it is handwritten. Even if this document is legitimate, it details x-rays taken thirteen months after two other x-rays that noted no fracture in Plaintiff's hand and fails to show or suggest that the delay in receiving his initial hand x-ray had any detrimental effect or otherwise affected Plaintiff's prognosis.

Plaintiff further claims that he was taken to UAMS on April 28 2017, and that he was seen by a "bone specialist" who agreed "that the Plaintiff right hand was in fact injured because he placed a (cast)[6] on it for (6) six weeks and said if it did not heal" Plaintiff would need surgery. ECF No. 39, p. 2. However, Plaintiff has failed to provide any medical records detailing this visit or stating the physician's conclusion on the cause or nature of Plaintiff's alleged injury.[7]

Accordingly, even accepting Plaintiff's allegations and claims as true, Plaintiff has failed to provide any evidence that would support a finding that the delay in having an x-ray performed

---

[6] Plaintiff has produced a medical restriction form dated April 29, 2017, that notes that he needed a bag to cover a cast on his right arm. The document does not state why he was wearing a cast.

[7] Plaintiff states that these documents are "all in [his] medical jacket" but has not provided them to the Court. ECF No. 41, ¶ 12. Plaintiff states that he made a request to Defendant to produce these documents "and they responded and said that they would not because the deadline for discovery had passed[.]" ECF No. 41, ¶ 13. However, notwithstanding the passage of the discovery deadline, it is unclear how Defendant would have obtained these documents without Plaintiff first signing some kind of consent form allowing either UAMS or ADC to release them directly to Defendant. Accordingly, Plaintiff's failed attempt to obtain his records through Defendant does not excuse the fact that they have not been made part of the record.

on his hand before being transported to the ADC had any detrimental effect on his prognosis. Thus, Defendant is entitled to summary judgment as to this claim.

### ii. Back Injury

Turning to Plaintiff's alleged back injury, a radiology report dated February 24, 2016, shows that x-rays were taken of Plaintiff's back while he was held in the ADC. ECF No. 31, p. 12. In that report, the physician states that "[t]here is anatomic alignment of lumbar vertebrae. The vertebral bodies have normal shape and ossification pattern. Posterior elements are intact." ECF No. 31, p. 12. The physician states as his conclusion: "Normal lumbar spine series." ECF No. 31, p. 12. That being said, Plaintiff has provided the Court with a radiology report from Premier MRI & Imaging of Little Rock dated September 27, 2007, concluding that Plaintiff suffered from early degenerative disc disease and early bilateral facet arthropathy. ECF No. 41-1, p. 25. Accordingly, the records provided by Plaintiff clearly show that any back issues he may have pre-date his fall at the CCDC. Plaintiff has not provided any evidence or directed the Court to any record evidence that would support a finding that the delay in having a x-ray performed on his back before being transferred to the ADC exacerbated or otherwise affected his existing back problems.

Therefore, drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has failed to provide verifying medical evidence showing that the delay in receiving his initial-x-rays caused any detrimental effect. Accordingly, the record would not support a finding that Defendant was deliberately indifferent to Plaintiff's serious medical need. Thus, Defendant is entitled to summary judgment as no genuine issue of material fact remains as to this claim.

## CONCLUSION

Upon *de novo* review, the Court adopts Judge Bryant's Report and Recommendation. ECF No. 42. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 36) should be and

hereby is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**. A Judgment of even date shall issue.

    **IT IS SO ORDERED**, this 30th day of January, 2018.

                                            /s/ Susan O. Hickey
                                            Susan O. Hickey
                                            United States District Judge